## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re: ) | |
| ) | |
| RULE 45 SUBPOENA ISSUED to Hue.Ai, ) | Misc. No. _____ |
| LLC, ) | |
| ) | (Pending in the United States District |
| Regarding the United States District Court ) | Court for the Western District of |
| for the Western District of Pennsylvania ) | Pennsylvania, Case No. 2:21-cv-00246- |
| case ) | RJC) |
| ) | |
| EYENAVISION, INC., ) | |
| ) | |
| Plaintiff/Counterclaim-Defendant, ) | |
| ) | |
| v. ) | |
| ) | |
| ENCHROMA, INC., ) | |
| ) | |
| Defendant/Counterclaim-Plaintiff. ) | |

## MEMORANDUM IN SUPPORT OF ENCHROMA, INC.'S
## MOTION TO COMPEL COMPLIANCE WITH SUBPOENA

# TABLE OF CONTENTS

I.   STATEMENT OF FACTS ........................................................................................2

    A.    The Underlying Litigation ..........................................................................2
    B.    Plaintiff Eyenavision's Discovery Production Deficiencies......................2
    C.    Hue.Ai's Failure to Comply with EnChroma's Subpoena .......................3

II.  ARGUMENT.............................................................................................................5

    A.    EnChroma's Subpoena Seeks Discovery that is Proportional to the Needs of the Case and Does Not Pose any Undue Burden on Plaintiff's Business Partner, Hue.Ai ............................................................................................5
        1.    The Requested Discovery is Highly Relevant to EnChroma's Patent Infringement Claim..............................................................5
        2.    The Burden on Hue.Ai is not Undue .............................................7
    B.    Hue.Ai's Remaining Objections Do Not Justify Withholding Production..............8

III. CONCLUSION........................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*BuzzFeed, Inc. v. U.S. Dep't of Just.*,
   318 F. Supp. 3d 347 (D.D.C. 2018) .................................................................................... 5, 7

*In re Denture Cream Prod. Liab Litig.*,
   292 F.R.D. 120 (D.D.C. 2013) ................................................................................................ 5

*Eyenavision, Inc. v. EnChroma, Inc.*,
   No. 2:21-cv-00246-RJC ................................................................................................. 1, 2, 6

*Fairholme Funds, Inc. v. Fed. Hous. Fin. Agency*,
   No. 1:13-CV-1053-RCL, 2019 WL 5864595 (D.D.C. Nov. 8, 2019) ...................................... 5

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
   318 F.Supp. 1116 (S.D. N.Y. 1970) ........................................................................................ 6

*Nalco Co. v. Chem-Mod, LLC*,
   883 F.3d 1337 (Fed. Cir. 2018) ............................................................................................... 6

*Software Rights Archive, LLC v. Google Inc.*,
   No. CIV.A. 2:07-CV-511-CE, 2009 WL 1438249 (D. Del. May 21, 2009) ........................... 8

*Stati v. Republic of Kazakhstan*,
   No. CV 14-1638 ....................................................................................................................... 7

*Viacom Int'l, Inc. v. YouTube, Inc.*,
   No. C 08-80129 SI, 2008 WL 3876142 (N.D. Cal. Aug. 18, 2008) ........................................ 8

*WCM Indus., Inc. v. IPS Corp.*,
   721 F.App'x 959 (Fed. Cir. 2018) ........................................................................................... 6

**Other Authorities**

Rule 26(a)(1) .................................................................................................................................. 1, 7

Rule 34 ............................................................................................................................................... 5

Rule 45 ........................................................................................................................................... 2, 5

This motion is to compel compliance with a subpoena issued by EnChroma, Inc. ("EnChroma"), a defendant and patent owner in a patent infringement litigation, and served upon the plaintiff's close business partner, Hue.Ai. The plaintiff, Eyenavision, Inc. ("Plaintiff") refuses to provide technical discovery and points to Hue.Ai as the custodian of those documents. Now, Hue.Ai refuses to comply with the subpoena and points back to the Plaintiff. EnChroma has no choice but to respectfully move this Court to compel Hue.Ai to comply with the subpoena.

Plaintiff initiated the underlying litigation by filing a declaratory judgment complaint trying to clear its products from infringement of a patent owned by EnChroma. That matter is pending in the Western District of Pennsylvania before the Honorable Robert J. Colville. *Eyenavision, Inc. v. EnChroma, Inc.*, No. 2:21-cv-00246-RJC (the "Lawsuit"). The Plaintiff's products are lenses used to help alleviate color vision deficiency ("CVD"), also referred to as "color blindness" (the "accused products"). The Plaintiff's accused products compete directly with EnChroma's patented lenses. In its declaratory judgment complaint, the Plaintiff identified Hue.Ai as the licensor of the technology in the accused products. And in its Rule 26(a)(1) Initial Disclosures, the Plaintiff identified Hue.Ai as a source for responsive discovery. When EnChroma moved to compel the Plaintiff to produce highly relevant technical documents, the Plaintiff successfully opposed the motion by arguing that it did not have the requested documents and that, instead, Hue.Ai has them. The few documents produced by the Plaintiff in the underlying litigation reveal that the Plaintiff and Hue.Ai worked closely together in connection with developing the Plaintiff's case. Despite that history, Hue.Ai has produced virtually no documents responsive to EnChroma's subpoena.

EnChroma has done its best to work with Hue.Ai, as a third party to the underlying litigation, and has offered multiple extensions and accommodations. Hue.Ai, though, has spent

the last two months stalling, repeatedly suggesting that significant productions are right around the corner, and repeatedly failing to deliver. To date, Hue.Ai's entire production consists of 30 documents that are marginally-responsive to only a fraction of EnChroma's requests. EnChroma therefore respectfully requests, pursuant to Rule 45, that the Court order Hue.Ai to produce all material responsive to EnChroma's subpoena.

## I.   STATEMENT OF FACTS

EnChroma is a company whose mission is to improve the lives of people with color blindness. To that end, EnChroma invented CVD-corrective filters that block certain colors or wavelengths of light while allowing other colors to pass through, thereby enabling those with CVD to see a broader spectrum of colors. EnChroma sells glasses and sunglasses that include these filters. Plaintiff launched a copy-cat product in November 2020 pursuant to a license with Hue.AI.

### A.   The Underlying Litigation

Eyenavision initiated the underlying litigation with a declaratory judgment complaint against EnChroma in the Western District of Pennsylvania in February 2021. Through that action, Eyenavision sought a determination, *inter alia*, that (1) Eyenavision does not infringe EnChroma's patent, and (2) that EnChroma's patent is invalid for a lack of "definiteness." Lawsuit, Dkt. 1, at ¶¶ 56-59, 75-91. EnChroma filed a counterclaim alleging that Eyenavision's products directly infringe EnChroma's patent. Lawsuit, Dkt. 11, at ¶¶ 24-42.

### B.   Plaintiff Eyenavision's Discovery Production Deficiencies

The early stages of discovery in the underlying litigation are governed, in part, by the Local Patent Rules of the Western District of Pennsylvania. Ex. A. Pursuant to these Local Patent Rules ("LPR"), Eyenavision was required to produce automatically fundamental technical documentation about the accused products, including things like specifications, schematics, and formulas showing the operation of the infringing lenses. Ex. A, LPR 3.1. EnChroma separately

served Eyenavision with requests for production and interrogatories specifically seeking discovery on the technical details of the infringing lenses and how they were designed. To date, Eyenavision has produced very few responsive technical documents, prompting EnChroma to file a motion to compel Eyenavision's compliance with the Local Patent Rules and the Federal Rules of Civil Procedure. Ex. B.

In response, Eyenavision claimed that "it was not in possession, custody or control of additional 'technical' documents." Ex. C, 6. Instead, Eyenavision pointed to its licensor, Hue.Ai, as the entity that has "possession, custody and control" of the additional technical" documents. Ex. D, 2-3. The subpoena underlying this motion followed.

**C.     Hue.Ai's Failure to Comply with EnChroma's Subpoena**

On September 23, 2022, EnChroma served non-party Hue.Ai with a subpoena seeking production of the discovery that Eyenavision claimed to not have. Ex. E; Ex. F. The subpoena seeks production of core technical documents concerning Hue.Ai's design, development, specification, testing, and manufacture of the infringing CVD lenses, as well as the relationship between Hue.Ai and Eyenavision. *See* Ex. E.

Hue.Ai acknowledged the subpoena via email correspondence on October 5, 2022—two days before the October 7 compliance date—seeking a three-week extension of time. Ex. G [email string]. EnChroma offered Hue.Ai a phased extension whereby Hue.Ai would (1) provide a written response by October 11 advising whether it has and will produce the requested documents, (2) begin a rolling production of those documents on October 14 and (3) conclude that production by October 25. Ex. G. While Hue.Ai subsequently provided objections and responses to EnChroma's subpoena (Ex. H [Hue.Ai objections]), Hue.Ai did not produce any documents with its objections and responses. When EnChroma inquired on Hue.Ai's timing for its production,

Hue.Ai responded that it would "try to estimate its ability to produce documents." Ex. I [email string].

On October 13, 2022—the day before Hue.Ai's rolling document production was set to begin—EnChroma wrote to confirm Hue.Ai's acceptance of the extension terms based on Hue.Ai's email correspondence and its provision of objections and responses to the subpoena. Ex. I. EnChroma further noted "[i]f our understanding is not correct, please let us know[.]" Ex. I. Hue.Ai did not respond.

On October 27, 2022—two days after Hue.Ai's rolling document production was set to conclude—EnChroma again wrote to Hue.Ai for a status update on the document production and seeking Hue.Ai's commitment to start and to complete its document production by a date certain. Ex. J, 1-2. Despite already having three additional weeks to produce the requested material, Hue.Ai responded by asserting that the "document requests encompass, more or less, the entirety of Hue.Ai's business records," and so it needed still more time. *Id.*, at 1.

Counsel for EnChroma and Hue.Ai then conferred on Friday, November 11. On that call, Hue.Ai provided a detailed proposal for its production. Hue.Ai would make one document product each week, starting the following Monday, with each set of documents responsive to about 10 of the requests stated in the subpoena. Under this schedule, Hue.Ai's document production would be complete in about a month.

Hue.Ai did not stick to the plan that it proposed. It produced about 100 pages of marginally-relevant documents on November 14, the bulk of which are public papers downloaded from the Internet, apparently selected because they purport to criticize EnChroma rather than because they are responsive to the subpoena. Hue.Ai produced nothing else in the month of November, and EnChroma again inquired on the status of Hue.Ai's document production. Ex. K.

In response, Hue.Ai produced just a handful of additional documents with a vague promise that additional material "should be forthcoming shortly." Ex. L.

On December 5, EnChroma requested that Hue.Ai complete its document production by the close of business on December 8—nearly 11 weeks after service of the subpoena. Ex. M. Hue.Ai did not respond to EnChroma's letter, nor did it produce any additional material.

## II.   ARGUMENT

### A.   EnChroma's Subpoena Seeks Discovery that is Proportional to the Needs of the Case and Does Not Pose any Undue Burden on Plaintiff's Business Partner, Hue.Ai

As a non-party to the underlying litigation, Hue.Ai remains subject to "the same scope of discovery under [Rule 45] as that person would be as a party to whom a request is addressed pursuant to Rule 34." Fed. R. Civ. P. 45, Advisory Committee Note (1991). Accordingly, district courts balance the relevance of the requested discovery with the burden imposed on the non-party. *See, e.g.*, *BuzzFeed, Inc. v. U.S. Dep't of Just.*, 318 F. Supp. 3d 347, 356 (D.D.C. 2018). Here, EnChroma's need for highly relevant documents far outweighs any burden imposed on Hue.Ai.

#### 1.   The Requested Discovery is Highly Relevant to EnChroma's Patent Infringement Claim

The subpoena seeks highly relevant technical information about the accused products in the underlying litigation—documents that the Plaintiff argues it does not have and therefore cannot produce. During discovery, the bar for relevance remains low for both parties and non-parties alike. *Fairholme Funds, Inc. v. Fed. Hous. Fin. Agency*, No. 1:13-CV-1053-RCL, 2019 WL 5864595, at *2 (D.D.C. Nov. 8, 2019); *In re Denture Cream Prod. Liab Litig.*, 292 F.R.D. 120, 123 (D.D.C. 2013) ("For purposes of discovery, relevance is liberally construed."). Plaintiff's partner, Hue.Ai is the entity who designed, developed, and licensed the infringing CVD lenses to Eyenavision. Hue.Ai benefits from the Plaintiff's infringing sales. And EnChroma's subpoena

calls for the production of technical documents concerning Hue.Ai's work with CVD technology, as well as Hue.Ai's involvement with Eyenavision. Such discovery sets the predicate for framing many of the issues involved in the underlying lawsuit. Indeed, this information is so fundamental to the conduct of a patent infringement lawsuit that the Local Patent Rules in the underlying lawsuit require it to be produced automatically. Ex. A, LPR 3.1 and 3.5.

For example, a number of EnChroma's requests seek information about the design, development, technical characteristics, and manufacturing of the CVD lenses designed and licensed to the Plaintiff by Hue.Ai. Ex. E, Request Nos. 8, 12-13, 16-19, 21-29, 32, 34. These documents have direct bearing on EnChroma's infringement allegations in the underlying lawsuit, and will inform allegations of literal patent infringement and infringement under the doctrine of equivalents (*e.g.*, whether the accused products have only insubstantial differences from the asserted patent claims).[1] Other requests seek information concerning whether and to what extent Hue.Ai's design of the CVD lenses was based on its knowledge of EnChroma's lenses and/or patent. *See* Ex. E, Request Nos. 1-5, 7, 9-10, 14. These documents directly relate to EnChroma's allegations of willful patent infringement by the Plaintiff.[2] EnChroma also seeks information concerning the value of the invention (Ex. E, Request Nos. 15, 20, 30-31, 33, 35-36), as well as Hue.Ai's interest and involvement in the conduct of the lawsuit (Ex. E, Request Nos. 11, 37-41), all of which is likely to inform EnChroma's damages model.[3]

---

[1] *See e.g., Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1354 (Fed. Cir. 2018).

[2] *See e.g., WCM Indus., Inc. v. IPS Corp.*, 721 F.App'x 959, 971 (Fed. Cir. 2018) (upholding verdict of willful infringement based on evidence of copying).

[3] *See e.g., Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F.Supp. 1116, 1120 (S.D. N.Y. 1970) (damages factors include the extent to which the parties compete directly or indirectly, "the utility and advantages of the patent," "the benefits to those who have used the invention," and "the portion of the profit or selling price that may be customary...for the use of the invention or analogous inventions").

Given that the Plaintiff claims to not have these foundational documents, EnChroma's only resource for this highly relevant discovery is the Plaintiff's partner and licensor, Hue.Ai.

### 2. The Burden on Hue.Ai is Not Undue

Compliance with the subpoena is not unduly burdensome. As an initial matter, the Federal Rules require the objecting party to "articulate the precise nature of its burden." *Stati v. Republic of Kazakhstan*, No. CV 14-1638 ABJ/DAR, 2020 WL 3259244, at *8 (D.D.C. June 5, 2020) (internal quotes omitted). Hue.Ai has not done so. Instead, Hue.Ai provides only boilerplate, generalized objections that the requests are "unduly burdensome," without explaining what is particularly burdensome about those requests or indicating what, if anything, Hue.Ai is withholding on those grounds. *See*, Ex. H.

Hue.Ai's "unduly burdensome" objections also do not outweigh EnChroma's need for the requested discovery. The appropriateness of a non-party's production burden depends on whether the discovery sought is (1) unreasonably cumulative or duplicative; (2) obtainable from a more convenient, less burdensome, or less expensive source; and (3) proportional to the needs of the case. *BuzzFeed*, 318 F. Supp. 3d at 359. All of these factors weigh in favor of ordering Hue.Ai. to comply. The Plaintiff identified Hue.Ai in both the declaratory judgment complaint and in its Rule 26(a)(1) initial disclosures. Hue.Ai designed the accused products that the Plaintiff sells, and the Plaintiff has repeatedly argued that it does not possess or control documents concerning the design or development of the accused products. Ex. D, at 1-3. Hue.Ai's production therefore could not be cumulative, duplicative, or obtained from a better source. Because the requested discovery is needed to advance and resolve the issues in the underlying litigation, the burden imposed on Hue.Ai in collecting and producing responsive documents is proportional to the needs of the case.

7

Moreover, Hue.Ai's boilerplate objection that the Plaintiff *should* possess some of the requested discovery is belied by the Plaintiff's representations to the District Court in the Western District of Pennsylvania and otherwise does not create an undue burden. Moreover, "there is no general rule that [parties] cannot seek nonparty discovery of documents likely to be in [the opposing party's] possession." *Viacom Int'l, Inc. v. YouTube, Inc.*, No. C 08-80129 SI, 2008 WL 3876142, at *3 (N.D. Cal. Aug. 18, 2008); *see also Software Rights Archive, LLC v. Google Inc.*, No. CIV.A. 2:07-CV-511-CE, 2009 WL 1438249, at *2 (D. Del. May 21, 2009). Potentially overlapping production between parties and non-parties may be particularly appropriate to highlight "different versions of documents, additional material, or perhaps, significant omissions." *Viacom*, 2008 WL 3876142 at *3. To ensure a complete production of basic technical documents, and in view of the Plaintiff's repeated arguments that it does not have responsive documents, EnChroma served a subpoena for targeted discovery from Hue.Ai. And as detailed above, EnChroma made repeated attempts to request this discovery from its party opponent—the Plaintiff—before turning to Hue.Ai out of necessity. Hue.Ai's attempt to redirect EnChroma back to the Plaintiff would prove fruitless and continue to impede progress in the underlying litigation.

**B.     Hue.Ai's Remaining Objections Do Not Justify Withholding Production**

Hue.Ai's remaining objections do not justify its failure to comply with the subpoena. By relying on objections that the requested documents are privileged, work product, or trade secrets, Hue.Ai ignores the procedures that are in place to protect both parties and non-parties in the underlying litigation.

First, as to every one of the requests, Hue.Ai asserts an identical, boilerplate objection on privilege and work product grounds. Ex. H, 4-45. For the vast majority of the requests, these objections have no apparent applicability. For example, Hue.Ai lodged this objection as to multiple requests seeking technical documents concerning the composition of the asserted lenses.

8

*Id.*, at 26-27 (Request No. 24), 29-31 (Request Nos. 26-28). These requests, on their face, do not seek privileged or work product information, and Hue.Ai's non-specific objections do not explain how privilege or work product protections could apply so broadly. Indeed, Hue.Ai's privilege log indicates that it withheld only nine documents, all on work product grounds. Ex. N. Even as to those nine documents, Hue.Ai's objections are improper. None of the documents on the privilege log (including a 2017 business plan) appear to have been prepared by or at the request of Hue.Ai's attorneys, nor were any of them sent to Hue.Ai's attorneys. *Id.* Instead, most of them were provided to non-legal employees of Eyenavision. *Id.*

Second, Hue.Ai objects to nearly every request in EnChroma's subpoena as seeking "highly-confidential information that constitutes a trade secret or proprietary commercial information of Hue.Ai." Ex. H, 5-45. In view of the Protective Order in the underlying litigation, this objection is unavailing. The Protective Order limits who can see documents designated "Confidential" or "Confidential Attorney Eyes Only" and EnChroma provided a copy of that Order to Hue.Ai. Ex. O, ¶¶ 2, 7-8. Notably, the Protective Order explicitly allows for "non-parties who receive a subpoena in connection with this action" to take advantage of its protections. *Id.*, ¶ 1. Indeed, EnChroma invited Hue.Ai to designate any of its sensitive information. Ex. G and I ("With respect to information deemed 'confidential' by Hue.Ai, the protective order in this matter . . . provides for sufficient safeguards. If there are specific concerns about certain information, we are happy to address them with you."). And Hue.Ai has taken advantage of the Protective Order, producing a small number of documents with confidentiality designations. Hue.Ai's reliance on this objection does not excuse its failure to produce any documents requested by EnChroma's subpoena. *Albany Molecular Rsch., Inc. v. Schloemer*, 274 F.R.D. 22, 26 (D.D.C. 2011) ("The existence of a protective order weighs against quashing the subpoena...because the protective

order is designed to protect and prevent public disclosure of confidential and sensitive business information, like that potentially at issue here.").

### III.  CONCLUSION

The subpoenaed materials are directly relevant to liability and damages issues in the underlying litigation and Hue.Ai is apparently the only source for those documents. Hue.Ai has lodged no valid objection to their production. Accordingly, EnChroma respectfully requests that the Court overrule Hue.Ai's objections and order Hue.Ai to produce all documents responsive to the subpoena.

Dated:  December 14, 2022

AKIN GUMP STRAUSS HAUER & FELD LLP

_/s/ David C. Vondle_

David C. Vondle
D.C. Bar 9788737
Akin Gump Strauss Hauer & Feld, LLP
2001 K Street, N.W.
Washington, D.C. 20006
Telephone:  (202) 887-4000
Facsimile:  (202) 887-4288
dvondle@akingump.com

Attorney for Defendant/Counterclaim Plaintiff
ENCHROMA, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of December, 2022, the foregoing document was hand delivered for filing with the Clerk of the Court.

_____
David C. Vondle